IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROGER BENSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 12-CV-48-WDS |
| ) | |
| UNILEVER UNITED STATES, INC., ) | |
| WAL-MART STORES, INC., and ) | |
| UNILEVER ILLINOIS ) | |
| MANUFACTURING, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court is plaintiff Roger Benson's motion to remand this matter to the Circuit Court of St. Clair County, Illinois, pursuant to 28 U.S.C. §§ 1446 and 1447(c) (Doc. 4). Defendants Unilever United States, Inc., Wal-Mart Stores, Inc., and Unilever Illinois Manufacturing, LLC have responded (Doc. 14), and plaintiff has replied (Doc. 15). Plaintiff moves to remand because only two of the three defendants—Unilever Illinois Manufacturing and Wal-Mart—joined in the notice of removal, while removal requires defendants' unanimous consent. Also before the Court is defendants' jurisdictional memorandum addressing the amount in controversy (Doc. 30).

### I. FACTS

Plaintiff Roger Benson injured his head, jaw, mouth, and teeth when he bit into a peanut-butter sandwich. A "hard nut shell-like foreign object" had found its way into his jar of Skippy peanut butter. The object split one of plaintiff's teeth, and the tooth had to be removed. He also had damage to the nerves, bones, joints, ligaments, and tendons in his

jaw, mouth, and teeth. He sustained bruises in his mouth and jaw and experienced physical and mental pain and suffering. He suffered headaches and paresthesia.[1] Medical and dental expenses were over $10,000 at the time of removal.

Plaintiff filed this product-liability action on December 18, 2011, against defendants Unilever Illinois Manufacturing, LLC, Unilever United States, Inc., and Wal-Mart Stores, Inc. in the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, Illinois (*Benson v. Unilever United States, et al.*, Case No. 11 L 679). For brevity, the Court will refer to Unilever Illinois Manufacturing as "Unilever Illinois" and to Unilever United States as "Unilever U.S."

Plaintiff claims disfigurement from the loss of his tooth and seeks total damages in excess of $200,000. He alleges that Unilever Illinois produced the jar of peanut butter at its plant in Franklin Park, Illinois, and that the object was in the jar when the jar left the plant. He further alleges that Unilever Illinois put the jar into the stream of commerce by "selling, and/or delivering" it to Unilever U.S., who then "delivered" it to a Wal-Mart store, where plaintiff purchased it (Doc. 2, Ex. A, ¶ 7).

Plaintiff served the summons and complaint on Wal-Mart and Unilever Illinois on December 19, 2011 (Doc. 2, Exs. C & D). Wal-Mart and Unilever Illinois state in their notice of removal that it does not appear Unilever U.S. was served (Doc. 2, ¶ 10). Plaintiff has since submitted an affidavit, though, showing that he also served Unilever U.S. on December 19, 2011 (Doc. 4, Ex. A). Unilever U.S. filed a notice of consent to removal on January 23, 2012 (Doc. 8). It filed its answer to the complaint in this Court a day later, on January 24 (Doc. 11).

---

[1] *Paresthesia* is "[a] skin sensation, such as burning, prickling, itching, or tingling, with no apparent physical cause." THE AMERICAN HERITAGE MEDICAL DICTIONARY (Houghton Mifflin Company 2007), http://medical-dictionary.thefreedictionary.com/paresthesia (last visited on May 10, 2012).

## II. SUBJECT-MATTER JURISDICTION

A district court's "first duty in every suit" is to establish the existence of subject-matter jurisdiction. *Johnson v. Wattenbarger*, 361 F.3d 991, 992 (7th Cir. 2004); *accord Krueger v. Cartwright*, 996 F.2d 928, 930–31 (7th Cir. 1993) ("Courts in the federal system are obliged to police the statutory and constitutional limitations on their subject matter jurisdiction.").

Unilever Illinois and Wal-Mart removed this action based on diversity jurisdiction. *See* 28 U.S.C. §§ 1441, 1332. Diversity first requires that the matter in controversy be between citizens of different states. *See* § 1332(a)(1). According to the complaint and the notice of removal, plaintiff is a citizen of Illinois. The first defendant, Unilever Illinois, is a limited liability company. The citizenship of a limited liability company for purposes of diversity jurisdiction is the citizenship of its members. *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998). Unilever Illinois is managed by a single managing organization, Conopco, Inc., which is a corporation organized in New York with its principal place of business in New Jersey. The second defendant, Unilever U.S., is a corporation organized in Delaware with its principal place of business in New Jersey. And the third defendant, Wal-Mart, is a corporation organized in Delaware with its principal place of business in Arkansas. Plaintiff and all three defendants are therefore citizens of different states, which meets the first requirement of diversity. *See* § 1332(a)(1).

Second, diversity requires that the matter in controversy exceed the sum or value of $75,000, exclusive of interest and costs, § 1332(a), as of when the federal suit began, *Carroll v. Stryker Corp.*, 658 F.3d 675, 680–81 (7th Cir. 2011); *Meridian Sec. Ins. v. Sadowski*, 441 F.3d 536, 538 (7th Cir. 2006); *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938). The amount in controversy stated in the plaintiff's complaint controls, as long as it is made in good faith. *St. Paul Mercury*, 303 U.S. at 288; *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 815 (7th Cir. 2006); *Meridian*, 441 F.3d at

541. At that point, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury*, 303 U.S. at 289; *accord Rising-Moore*, 435 F.3d at 815.

Here we are faced with an unusual situation. Plaintiff has included an *ad damnum* of over $200,000 in his complaint even though Illinois law prohibits personal-injury plaintiffs from pleading an *ad damnum* "except to the minimum extent necessary to comply with the circuit rules of assignment where the claim is filed." 735 ILCS 5/2-604; *accord Meridian*, 441 F.3d at 541. A complaint that violates that prohibition and pleads a specific *ad damnum* will ordinarily be dismissed. 735 ILCS 5/2-604. But before that could happen here, defendants removed. So, the run of similar removal cases deal with vague pleadings of "over $50,000" in damages and how, without a better estimate of damages, the removing party and courts should establish the amount in controversy. *See generally Meridian*, 441 F.3d at 541.

The Court observed previously, in its Order directing defendants to file a jurisdictional brief (Doc. 29), that it is skeptical of plaintiff's damages claim. Plaintiff alleges among other things that he split a tooth and suffered damage to the nerves, bones, joints, ligaments, and tendons in his jaw, mouth, and teeth. He alleges "disfigurement," but it is only from the loss of a tooth, which is not generally what one thinks of as a disfigurement. And for all the claimed damages, plaintiff had only $10,000 in medical and dental expenses at the time of removal. It is does not seem plausible that disfigurement from a lost tooth amounts to tens of thousands of dollars' in damages or that pain and suffering could push his total damages above $75,000. *See Rising-Moore*, 435 F.3d at 815 (finding that medical expenses and lost earnings of $45,000 with a "modest allowance for pain, suffering, and future losses … brings the total over the threshold"). Further, plaintiff does not allege any loss of property, specific medical treatment, functional impairments, or disability, *see Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 851 (5th Cir. 1999), severe and permanent in-

4

juries, *see Andrews v. E.I. Du Pont De Nemours & Co.*, 447 F.3d 510, 514–15 (7th Cir. 2006), lost earnings or future lost income, *see Rising-Moore*, 435 F.3d at 815, or punitive damages, *see Anthony v. Sec. Pac. Fin. Servs., Inc.*, 75 F.3d 311, 317–18 (7th Cir. 1996).

Defendants agree that plaintiff's damages claim "seems excessive under the circumstances," but they point out that his attorney filed an affidavit stating that "[t]he amount claimed in the complaint is for a sum in excess of $200,000.00 for personal and bodily injury and medical and dental expenses" (Doc. 9, p. 5). They also point out there is no legal bar making it impossible to recover that amount. *See Rising-Moore*, 435 F.3d at 815.

Because the plaintiff is in the best position to know the true value of his claims, if he pleads a specific amount, it controls, unless recovering that amount would be legally impossible. It cannot be said that recovery of $200,000 is legally impossible. Moreover, in cases removed to federal court, the amount alleged in the plaintiff's complaint "is presumed correct on the assumption that a plaintiff would not fabricate the amount in controversy to meet the federal diversity jurisdiction requirements and then file her suit in state court relying on the defendant to remove the case to federal court." *Smith v. Am. Gen. Life and Acc. Ins. Co., Inc.*, 337 F.3d 888, 892 (7th Cir. 2003). Thus the Court is satisfied that the matter in controversy here exceeds the sum or value of $75,000.

### III. Unanimity

Plaintiff here argues that all three defendants were properly served on December 19, 2011, that valid removal required defendants' unanimous consent, but that Unilever U.S. did not join in removal within the required 30 days (by January 18, 2012). Its notice of its consent to removal came too late, on January 23, 2012.

The Court first notes that the Federal Courts Jurisdiction and Venue Clarification Act of 2011 took effect on January 6, 2012. *See* Pub. L. No. 112-63, § 105(a), 125 Stat.

758. The Act applies to any action commenced on or after its effective date, Pub. L. No. 112-63, § 105, 125 Stat. 759; *MB Fin., N.A. v. Stevens*, 678 F.3d 497, 498 (7th Cir. 2012), but an action "commenced in State court and removed to Federal court shall be deemed to commence on the date the action … was commenced, within the meaning of State law, in State court." § 105(b). In Illinois, an action generally commences when the complaint is filed. 735 ILL. COMP. STAT. 5/2-201(a); *Wilson v. Tromly*, 89 N.E.2d 22, 26 (Ill. 1949). This action, therefore, commenced when the complaint was filed in the Circuit Court of St. Clair County on December 18, 2011 (Doc. 2, Ex. A). That was before the effective date of the Act (January 6, 2012), so the new Act does not apply to this motion to remand.

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing where such action is pending." Valid removal requires the consent of all defendants, *Townsquare Media, Inc. v. Brill*, 652 F.3d 767, 770 (7th Cir. 2011); *Pettit v. Boeing Co.*, 606 F.3d 340, 343 (7th Cir. 2010); *Chi., Rock Island & Pac. Ry. Co. v. Martin*, 178 U.S. 245, 248 (1900), unless they were not properly served at the time of removal, *Pullman Co. v. Jenkins*, 305 U.S. 534, 540–41 (1939); *P.P. Farmers' Elevator Co. v. Farmers Elevator Mut. Ins. Co.*, 395 F.2d 546, 547–48 (7th Cir. 1968); *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 369 (7th Cir. 1993). Further, the notice of removal in a civil action must be filed within 30 days of service. 28 U.S.C. § 1446(b) (2006 & Supp. IV); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48, 354 (1999); *Brown v. Lirios*, 391 Fed. App'x 539, 541 (7th Cir. 2010).

Defendants try to argue against the unanimity requirement. Even though Unilever U.S. did not sign the notice of removal, they say, it nevertheless manifested its intent to remain in federal court by "timely" filing an answer and opposing plaintiff's motion to remand. Defendants do not support their assertion of timeliness, however, and the facts con-

tradict it: The notice of consent to removal was filed five days too late, on January 23, and the answer was filed a day later.

Defendants offer several cases from other circuits intending to show that an apparent lack of unanimity can be remedied by the nonsigning defendant's opposition to a motion to remand. But those cases did not have the timing issue we have here. They concerned *how* defendants may manifest their written consent to removal other than by joining the notice of removal itself. *See Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 25 (1st Cir. 2012) (defendant hospital filed its answer in the district court within 30 days and vigorously opposed the motion to remand)[2]; *Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 76–77 (1st Cir. 2009) ("even assuming" the defendant's timely answer in federal court did not constitute valid consent, defendant's later opposition to remand cured the defect); *Harper v. AutoAlliance Intern., Inc.*, 392 F.3d 195, 201–02 (6th Cir. 2004) (nonsigning defendant filed answer in district court within 30 days, notice of removal attested to his consent to removal, and he subsequently opposed motion to remand).

Moreover, the statute governing removal states that 30 days is the time allowed for removal once proper service has been made on the defendant. *See* § 1446(b); *Murphy Bros.*, 526 U.S. at 354. Unilever U.S. did not manifest its consent within 30 days.

## IV. Nominal Party

Defendants also argue that Unilever U.S. is a so-called nominal or formal party. They say no claim can be stated against Unilever U.S., so there is no reasonable basis for predicting it will be liable. Specifically, according to defendants, plaintiff's claim of strict product liability requires proof that his injuries resulted from a condition of the product "manufactured or sold" by the defendant. Ill. Pattern Jury Instr. Civ. 400.00 Note 1 (2011

---

[2] The facts in the district court showed that the defendant hospital had agreed to removal beforehand, filed its answer in federal court within 30 days, and opposed the motion to remand. *Samaan v. St. Joseph Hosp.*, 685 F.Supp.2d 163, 165, 167 (D. Me. 2010).

ed.); *see also Suvada v. White Motor Co.*, 210 N.E.2d 182, 187 (Ill. 1965), *overruled on other grounds by Dixon v. Chi. & N.W. Transp. Co.*, 601 N.E.2d 704, 711 (Ill. 1992). Plaintiff here only alleges that Unilever U.S. "delivered the peanut butter to defendant Wal-Mart." Thus, nowhere does plaintiff allege that Unilever U.S. either *manufactured or sold* the peanut butter. At most, Unilever U.S. only delivered it, and delivering is not an act that can subject anyone to liability, defendants claim. Consequently, they conclude that plaintiff fails to state a claim against Unilever U.S. upon which relief can be granted. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

As mentioned above, removal generally requires the consent of all defendants—but only indispensable defendants. The consent of so-called nominal or formal parties is not required. *Ryan v. State Bd. of Elections of the State of Ill.*, 661 F.2d 1130, 1134 (7th Cir. 1981); *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 369 (7th Cir. 1993); *First Nat'l Bank of Chi. v. Mottola*, 302 F.Supp. 785, 790–91 (N.D. Ill. 1969), *aff'd in* 465 F.2d 343, 345 (7th Cir. 1972). A defendant is nominal if there is "no reasonable basis for predicting it will be held liable." *Shaw*, 994 F.2d at 369 (citing 14A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3731 n.10 (1985)). Other circuits have defined a nominal defendant as one against whom the plaintiff would have no possibility of establishing a cause of action in state court, *Farias v. Bexar Cnty. Bd. of Trs. for Mental Health Mental Retardation Servs.*, 925 F.2d 866, 871 (5th Cir. 1991), or against whom no real relief is sought, *Thorn v. Amalgamated Transit Union*, 305 F.3d 826, 833 (8th Cir. 2002).

In *Shaw v. Dow Brands*, the plaintiff had an accident with Dow Bathroom Cleaner. He alleged strict product liability and negligence against several companies, including Dow Brands, Inc. and its owner and parent company, Dow Chemical Co. Dow Chemical did not sign the notice of removal. But since it "had no connection with the manufacture, sale, or distribution of Dow Bathroom Cleaner" and "engaged in no independent alleged wrongdoing but was joined solely because of the acts of its subsidiary," the court of ap-

peals held it was probably a nominal party. 994 F.2d at 369. In the end, the court held that the plaintiff's prior agreement to dismiss Dow Chemical, Dow Chemical's belated consent, "the fact that Dow Chemical is probably nominal," and the plaintiff's acquiescence combined to persuade the court that jurisdiction was not defeated by the lack of Dow Chemical's signature on the notice of removal. *Id.*

In *Ryan v. State Board of Elections*, the plaintiffs were challenging the constitutionality of Illinois' congressional districts. Based on the 1980 census report, the Illinois General Assembly was required to enact a constitutional reapportionment plan for the districts. It was argued that removal was defective because the clerk of Cook County had not joined in removal. The court of appeals held that the clerk was only a nominal party. 661 F.2d at 1134. The duty of supervising the state's election laws belonged to the State Board of Elections, not the clerk, whose duties were "purely ministerial" and confined to Cook County. *Id.*

As discussed above, a nominal party is one against whom there is no reasonable basis for predicting it will be held liable. That is not the same standard as a motion to dismiss for failure to state a claim. The court of appeals did not evaluate whether the plaintiff in *Ryan* had failed to state a claim against the clerk of Cook County, or whether the plaintiff in *Shaw* had failed to state a claim against Dow Chemical. So defendants are using the wrong standard.

In *Shaw*, Dow Chemical was only a parent company that had *no* connection with the manufacture, sale, or distribution of Dow Bathroom Cleaner; whereas here defendants admit that Unilever U.S. has a connection with the distribution of the peanut butter, namely, its delivery. So there is, in fact, a reasonable basis for predicting Unilever U.S. will be held liable. Furthermore, the court of appeals only found that Dow Chemical was "probably nominal." There were other factors not present here—including the plaintiff's prior agreement to dismiss Dow Chemical—that in combination excused the defect in removal.

9

The Court therefore **FINDS** that Unilever U.S. is not a nominal party.

Defendants also construe the law of strict product liability too narrowly. Only delivering the peanut butter is, defendants claim, not an act that would subject any entity to liability. In 2008, the Illinois Supreme Court listed the elements of a strict-liability claim based on a product defect as (1) a condition of the product as a result of manufacturing or design, (2) that made the product unreasonably dangerous, (3) that existed at the time the product left the defendant's control, and (4) an injury to the plaintiff, (5) that was proximately caused by the condition. *Mikolajczyk v. Ford Motor Co.*, 901 N.E.2d 329, 345 (Ill. 2008); *see also Sollami v. Eaton*, 747 N.E.2d 375, 219 (Ill. 2002). Of note, in listing those elements, the Illinois Supreme Court did not limit liability to manufacturers and sellers. And in other cases, Illinois courts have been explicit that liability casts a broad net: "In a products liability action, all persons in the distributive chain are liable for injuries resulting from a defective product, including suppliers, distributors, wholesalers and retailers." *Hammond v. N. Am. Asbestos Corp.*, 454 N.E.2d 210, 216 (Ill. 1983); *accord Graham v. Bostrom Seating, Inc.*, 921 N.E.2d 1222, (Ill. App. 2010) ("Strict liability applies to all the elements in the distribution system."); *Dunham v. Vaughan & Bushnell Mfg. Co.*, 247 N.E.2d 401, 404 (Ill. 1969). Plaintiff alleges Unilever U.S. delivered the peanut butter to Wal-Mart. That puts Unilever U.S. in the "distributive chain" and potentially subject to liability.

As a final point, in making the above argument, defendants stress a close reading of plaintiff's complaint and the fact he did not specifically say "sold." Yet Unilever U.S.'s own answer says "this Defendant was nothing more than a seller in the stream of commerce … " (Doc. 11, p. 4, ¶ 11). Selling is admitted. Defendants cannot maintain that Unilever U.S. was only delivering the product.

## V. Seller's Exception

Defendants next argue that there is "no chance" plaintiff will recover against Unilever U.S.. Illinois provides a "seller's exception" in product-liability actions, *see* 735 ILL. COMP. STAT. 5/2-621, sometimes called the "Distributor Statute," which allows the dismissal of any nonmanufacturer defendant who has not contributed to the alleged defect in the product. Defendants believe Unilever U.S. qualifies as a nonmanufacturer defendant under § 2-621. They also assert that plaintiff has an affirmative duty under § 2-621 to obtain jurisdiction over a manufacturing defendant once its identity is known.

Plaintiff responds briefly, and incorrectly, that § 2-621 was declared unconstitutional by the Illinois Supreme Court in *Best v. Taylor Mach. Works*, 689 N.E.2d 1057 (Ill. 1997). Only Public Act 89-7, which amended § 2-621, was declared unconstitutional. The unamended version of § 2-621 is still in effect. *Murphy v. Mancari's Chrysler Plymouth, Inc.*, 887 N.E.2d 569, 572 n.2 (Ill. App. 2008); *Whelchel v. Briggs & Stratton Corp.*, --- F. Supp.2d ----, Case No. 11 C 4595, 2012 WL 404499, at *5 n.4 (N.D. Ill. Feb. 7, 2012).

The unamended version of the statute begins as follows:

> In any product liability action based in whole or in part on the doctrine of strict liability in tort commenced or maintained against a defendant … other than the manufacturer, that party shall upon answering or otherwise pleading file an affidavit certifying the correct identity of the manufacturer of the product allegedly causing injury, death or damage.

§ 2-621(a) (West 2003). Once the plaintiff has filed a complaint against the manufacturer, and the manufacturer has answered or otherwise pleaded, the court must dismiss the strict liability in tort claim against the certifying defendant, unless the plaintiff can show that the defendant:

> (1) "has exercised some significant control over the design or manufacture of the product, or has provided instructions or warnings … relative to the alleged defect in the product,"
> (2) "had actual knowledge of the defect in the product," or
> (3) "created the defect in the product."

§§ 2-621(b), (c); *accord Murphy*, 887 N.E.2d at 573; *see also Brobbey v. Enter. Leasing Co. of Chi.*, 935 N.E.2d 1084, 1092 (Ill. App. 2010); *Caterpillar, Inc. v. Usinor Industeel*, 393 F.Supp.2d 659, 684 (N.D. Ill. 2005).

Nevertheless, the certifying defendant may be reinstated at any time after dismissal if an action against the manufacturer would be "impossible or unavailing," *Murphy*, 887 N.E.2d at 573, such as if the statute of limitations has lapsed or if the manufacturer is unable to satisfy a judgment, § 2-621(b)(1), (4).

Here, defendants are again applying an inapplicable standard. Although they do not expressly say it, they appear to be applying a motion-to-dismiss standard. But the issue is whether removal was defective. So their best argument again might be that Unilever U.S. is a nominal party, *i.e.*, that there is no reasonable basis for predicting Unilever U.S. will be held liable given the seller's exception described above. They use similar language, saying there is "no chance plaintiff will recover against Unilever U.S." (Doc. 14, p. 8). As the Court discussed above, though, Unilever U.S. delivered and admits it sold the peanut butter. It is not a nominal party.

Even with § 2-621, the Court disagrees with the specific claim that there is no chance plaintiff will recover against Unilever U.S. Defendants have not shown that dismissal is required under § 2-621. Upon answering or otherwise pleading, Unilever U.S. needed to file an affidavit certifying the correct identity of the manufacturer of the product. *See* § 2-621(a). It has not done so (*see* Doc. 11). Had it done so and filed the proper motion, dismissal would have been mandatory. *See Murphy*, 887 N.E.2d at 573. But even then, plaintiff could move to reinstate it later in the proceedings. So the Court cannot conclude there is no chance plaintiff will recover against Unilever U.S.

Lastly, plaintiff suggests remand is required because Wal-Mart has acted inconsistently with its joinder in removal by filing an appearance in state court. And defendants

mention that plaintiff's affidavit showing that he served Unilever U.S. was not file-stamped in the state court. These potential arguments are waived because the parties did not pursue them or cite any relevant legal authority. *See* SDIL-LR 7(d); *see also United States v. Adams*, 625 F.3d 371, 378 (7th Cir. 2010) (argument is waived by the failure to develop it "in any meaningful way").

## VI. Conclusion

For the reasons above, plaintiff's motion to remand (Doc. 4) is **GRANTED**. This case is **REMANDED** to the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, Illinois.

**IT IS SO ORDERED.**

**DATED: August 1, 2012**

                                                              **/s/ WILLIAM D. STIEHL**
                                                                   **DISTRICT JUDGE**